**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MISSION MEASUREMENT CORPORATION and MISSION METRICS, LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> BLACKBAUD, INC. & MICROEDGE LLC, <br><br> *Defendants*. | Civil Action No. 1: 16-cv-06003 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Mission Measurement Corporation ("Mission Measurement") and Mission Metrics, LLC ("Mission Metrics" and collectively with Mission Measurement, "Plaintiffs") allege as follows against Defendants Blackbaud, Inc. ("Blackbaud") and MicroEdge, LLC ("MicroEdge" and collectively with Blackbaud, "Defendants"):

## NATURE OF THE ACTION

1.     This is an action by Mission Measurement and Mission Metrics for breach of contract, trade secret misappropriation, promissory estoppel and unjust enrichment. After years of stringing Mission Measurement along and extracting key ideas, data and designs from Plaintiffs, Defendants purloined the fruit of Plaintiffs' labor and launched a jointly developed product as their own.

## PARTIES

2.     Mission Measurement Corporation, formerly known as and successor in interest to Mission Measurement, LLC, is a corporation organized under the laws of Delaware with a principal place of business at 200 North LaSalle St., Suite 2650, Chicago, Illinois 60601.

1

3.     Mission Metrics, LLC is a limited-liability company organized under the laws of Illinois with a principal place of business at 200 North LaSalle St., Suite 2650, Chicago, Illinois 60601.  Mission Metrics, LLC and Mission Measurement Corporation are sister companies.

4.     Blackbaud, Inc. is a corporation organized under the laws of Delaware with a principal place of business at 2000 Daniel Island Drive, Charleston, South Carolina 29492.

5.     MicroEdge, LLC is a limited liability company organized under the laws of New York with a principal place of business at 619 W. 54th Street, 10th Floor, New York, New York 10019.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this action.

7.     This trade secret misappropriation action raises a federal question under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq*.  The Court has supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1367.

8.     Venue and jurisdiction before this Court are proper because Mission Measurement and Defendant MicroEdge are parties to the Confidentiality and Nondisclosure Agreement (the "Confidentiality Agreement") dated June 26, 2012, which provides, *inter alia*, that MicroEdge will not challenge the jurisdiction or venue of this Court.  A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit 1.  Blackbaud acquired MicroEdge in 2014 and is therefore likewise bound by the Confidentiality Agreement.

9.     Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred in this district.

10.     The Court has personal jurisdiction over Defendants.

11.     On information and belief, Defendants have conducted and currently conduct business within the State of Illinois.   MicroEdge representatives traveled to Mission

2

Measurement's Chicago office to negotiate the Confidentiality Agreement and attended several meetings there relating to joint product development efforts, additional contract negotiations and other business.

12.     On information and belief, Defendants directly or through intermediaries (including distributors, retailers, and others) transmit, ship, distribute, offer for sale, sell and advertise (including through interactive web pages) their products and services in the State of Illinois and the Northern District of Illinois.

13.     On information and belief, Defendants have purposefully and voluntarily placed what they purport to be their solely owned products and services, including "Blackbaud Outcomes," into the stream of commerce with the expectation that they will be purchased and used by customers located in the State of Illinois and the Northern District of Illinois.

## BACKGROUND

### *Mission Measurement and the Development of its Extensive Intellectual Property*

14.     Mission Measurement is the market leader in social sector data and insights relating to social change programs aimed at addressing some of the world's biggest challenges such as poverty, hunger, access to healthcare and climate change.   One goal of Mission Measurement is to change the way corporations, governments, foundations and non-profits invest in philanthropic causes by using data to measure and forecast social impact program outcomes.

15.     Using data collected from social program evaluations, Mission Measurement compiled a database of over 75,000 different data points, which it categorized into about 130 social outcome types.   These data are used to grade whether a particular program will achieve its objectives, the average expected cost to do so and the total number of people served by the

3

program.  Thus, Mission Measurement helps its customers make better investment decisions to maximize return on investment.

16.     Over the last eleven years, Mission Measurement has developed its proprietary database, the Outcome Taxonomy$^{TM}$, which required more than six people to develop and implement Mission Measurement's vision for database and software products and methods to gauge social impact.  Mission Measurement's novel software solution for its clients includes the Outcome Taxonomy, an evidence base, a data collection unit, a metric calculations unit, and a benchmark database.  Certain aspects of Mission Measurement's system are detailed in U.S. Patent Application Ser. No. 14/137,580 entitled "System and Method for Analyzing and Predicting the Impact of Social Programs," filed on December 20, 2013.  The application, which published on September 18, 2014 as U.S. Pub. No. 2014/0278756, claims priority to an earlier provisional application No. 61/793,908 filed on March 15, 2013.  The application is pending at the U.S. Patent and Trademark Office.  The application is assigned to Mission Metrics.

### History of the Negotiations with MicroEdge

17.     MicroEdge is a provider of software solutions to automate the charitable giving process.  On or about February 29, 2012, Alan Cline, Principal at Vista Equity Partners ("Vista"), contacted Mission Measurement's CEO Jason Saul for Mission Measurement's assistance in helping MicroEdge develop a way to measure outcomes.  Vista is a private equity firm that held significant investments in MicroEdge.

18.     On information and belief, Vista and MicroEdge knew that MicroEdge had little to no knowledge or experience in measuring outcomes from philanthropic programs and managing the associated data.  They needed Mission Measurement's expertise and pursued a partnership.  Mr. Cline's initial contact led to a series of communications between Mission Measurement and MicroEdge with the goal to jointly develop and jointly own a new software

4

application based on Mission Measurement's trade secrets, the Outcome Taxonomy and other intellectual property.

19.     On information and belief, Vista had significant concerns about obtaining a return on its investment in MicroEdge and wanted MicroEdge to innovate.  Unable to effectively do so on its own, MicroEdge, through Vista, sought out Mission Measurement.  Because, on information and belief, MicroEdge would soon be put up for sale, Vista and MicroEdge needed new products to increase the enterprise value for the sale.

20.     On or about March 16, 2012, MicroEdge's CEO Preston McKenzie communicated to Mr. Saul MicroEdge's desire to engage Mission Measurement to help it develop a software product to measure outcomes.  Mr. Saul made it clear in the conversation that Mission Measurement had long considered developing a software application for its own commercialization and would not be interested in "helping" MicroEdge develop a product unless Mission Measurement received equity in MicroEdge or royalties based on sales of the software product.

21.     Thereafter, in April and May 2012, Messrs. McKenzie and Saul had additional discussions in which terms of an agreement were discussed, and in which Mr. McKenzie confirmed MicroEdge's interest in proceeding to negotiate an agreement with Mission Measurement to jointly develop a product and share revenues.

22.     To protect the confidential and proprietary nature of such discussions, Mission Measurement and MicroEdge executed the Confidentiality Agreement dated June 26, 2012 (Exhibit 1).  Among other terms, it includes provisions that:

a.     prohibit the use and disclosure of confidential information to any third party;

b.      acknowledge that all disclosures made by Mission Measurement to MicroEdge before June 26, 2012, constitute protected confidential information under the agreement, including but not limited to high-level software design specifications for functionality related to measuring social impact, outcome taxonomies, impact reports and analytics, and business models for selling access to metrics databases;

c.      provide for damages and injunctive relief in the event of a breach;

d.      state that Illinois law governs; and

e.      provide that the parties consent to the jurisdiction and venue of the state or federal courts located in Chicago, Illinois relating to lawsuits arising from the agreement.

23.     On August 18, 2012, approximately two months after execution of the Confidentiality Agreement, Mission Measurement sent MicroEdge an email with attachments describing the joint project.  The attachments included confidential information such as a taxonomy sample and screenshots of an outcomes prototype as well as aspects of Plaintiffs' system that are not described in the patent applications.  Mission Measurement also provided MicroEdge with confidential information and product design specifications on numerous other occasions, for example, on or about July 10, 2012, August 13, 2012, August 16, 2012, and in September-October 2012.

24.     In the Fall of 2012, Mission Measurement and MicroEdge conducted focus groups to determine market demand and test potential client response for their jointly developed product.    During that time, Mission Measurement and MicroEdge negotiated a Joint Development Agreement ("JDA"), which specified that the software was jointly owned by the parties to that agreement, that Mission Measurement exclusively owns the Outcomes Taxonomy and that MicroEdge would pay royalties as well as a development fee to Mission Measurement

upon commercialization. While not ultimately executed (notwithstanding Mission Measurement's consistent and persistent efforts to consummate such contract), the JDA evidences the parties' intent to contract and the terms on which their business venture was clearly predicated.

25.     On or about October 16, 2012, Mission Measurement and MicroEdge jointly presented their product prototype before a focus group of their clients and potential clients who were bound by confidentiality. The Outcome Taxonomy™ was specifically identified as Mission Measurement's intellectual property. Consequently, before and during the focus group presentations, MicroEdge explicitly acknowledged that the Outcomes Taxonomy™ and other intellectual property originated solely from Mission Measurement.

26.     As evidenced above and throughout the course of dealing, MicroEdge repeatedly recognized the significant value of Mission Measurement's intellectual property and its criticality to the joint software product. Accordingly, in 2012 and early 2013, Mission Measurement and MicroEdge began discussing the terms of a definitive agreement to memorialize their understanding that the software product being developed was and is jointly owned and that they share the revenues based on the sales of the product.

27.     As of January 2013, Mission Measurement and MicroEdge had reached an agreement on these essential terms but other terms and conditions were to be finalized. The parties, particularly MicroEdge, wanted to finalize the product and launch it as soon as possible. To that end, on or about January 16, 2013, Mission Measurement and MicroEdge executed a Letter of Intent as an interim agreement prior to the execution of a definitive agreement. Because Blackbaud acquired MicroEdge in 2014, it is also bound by the Letter of Intent.

28.     Mission Measurement and MicroEdge agreed that the terms and conditions of the Letter of Intent are confidential, but among other provisions, the Letter of Intent requires that Mission Measurement and MicroEdge:

a.     collaborate on joint software product development combining Mission Measurement's trade secrets and intellectual property and MicroEdge's existing software;

b.     keep confidential the proprietary information provided to the other;

c.     negotiate in good faith to finalize the definitive agreement;

d.     are barred, in the event no definitive agreement is executed and the parties terminate the Letter of Intent, for a certain period following termination of the Letter of Intent from directly or indirectly providing, marketing or selling any product, device, service or instrument that is substantially similar to the jointly developed software (hereafter the "Non-Compete");

e.     certify that each has returned or destroyed all confidential information in their possession upon termination;

f.     keep and hold all confidential information received in the strictest confidence and refrain from using the same for any purpose both during the term and thereafter; and

g.     not sell, reverse engineer, disclose to third parties, modify or adapt, or write or develop derivative works of each other's trade secrets and other intellectual property, whether on their own or through affiliates, employees, consultant, contractors, agents or other third parties.

29.     Significantly, the Letter of Intent explicitly acknowledged the joint nature of the product in terms of joint product development, joint technology development and joint sales

pitch meetings. However, the Outcomes Taxonomy is clearly stated as Mission Measurement's sole property.

30. After execution of the Letter of Intent on January 16, 2013, Mission Measurement and MicroEdge continued to share intellectual property and develop a project plan. On or about February 19, 2013, MicroEdge's development team visited Mission Measurement in Chicago where Mission Measurement shared additional confidential information. At that time, Mission Measurement and MicroEdge engaged in an extensive brainstorming session related to the joint development of the software product. They discussed a broad array of issues including, but not limited to, a 90-day project plan, a long-term project plan, product design, gap analysis, technical requirements, business case scenarios, revenue sharing models between Mission Measurement and MicroEdge, product pricing, customer lists and customer segmentation.

31. Multiple meetings and telephone calls ensued after the February 2013 meeting to develop and finalize the product. Mr. Saul and others at Mission Measurement provided substantial and essential feedback and oversight.

32. Mission Measurement and MicroEdge worked in close collaboration for over two years, from June 2012 through May 2014, with Mission Measurement educating MicroEdge's software engineers and executives on Mission Measurement's intellectual property, including its Outcomes Taxonomy, that would be integrated into the jointly owned software product.

33. Among other confidential and proprietary information shared with MicroEdge from 2012 to 2014, Mission Measurement disclosed:

   a.  a specialized Outcomes Taxonomy;

   b.  a method for collecting standardized data;

   c.  a method for calculating grantee impact;

9

     d.     software design specifications;

     e.     impact reports and analytics; and

     f.     business models for selling access to metrics databases.

34.     Other confidential information disclosed by Mission Measurement to MicroEdge in 2012 to 2014 included drawings, sketches, designs, screen mock-ups, measurement concepts and calculations, business plans, and product development plans. Certain of these aspects of Mission Measurement's intellectual property were not included in the patent application filings because Mission Measurement kept them as trade secrets as permitted under patent law.

35.     During all relevant times herein, Mission Measurement maintained in secret the proprietary and confidential information disclosed to MicroEdge. Mission Measurement has derived and continues to derive significant value from the secrecy of its trade secrets. Mission Measurement has taken reasonable steps to maintain the secrecy of the confidential information described herein.

36.     During all relevant times herein, MicroEdge and Mission Measurement intended that the software product be a joint offering. In fact, MicroEdge and Mission Measurement pitched the joint product to clients and client prospects.

### *The Set-Up by Defendants*

37.     Despite MicroEdge's representations and conduct, the Letter of Intent was a set-up. MicroEdge failed to act in good faith in negotiating the definitive agreement. Instead, MicroEdge embarked on an intentional and consistent strategy of delay and obfuscation in its communications with Mission Measurement.

38.     Attached as Exhibit 2 is a true and correct copy of an email string from April and May 2014 between Kristin Nimsger, CEO of MicroEdge, and Jason Saul of Mission

Measurement. Among other things, in this string Mr. Saul asked Ms. Nimsger if MicroEdge is "still intending to proceed." Ms. Nimsger replied: "Yes Jason."

39.     However, after the May 2014 email exchange between Mr. Saul and Ms. Nimsger and a June 18, 2014 telephone call among Mr. Saul, Ms. Nimsger and Charles Vanek of MicroEdge, MicroEdge ceased all communications with Mission Measurement, which heard nothing further until September 3, 2014.

40.     On September 3, 2014, Mr. Saul saw news reports that MicroEdge was sold to Defendant Blackbaud for $160 million. Exhibit 3 is a true and correct copy of MicroEdge's press release dated September 2, 2014. Charles Vanek, MicroEdge's then Vice President of Business Development, forwarded a news report of the sale to Mr. Saul. Attached as Exhibit 4 is a true and correct copy of an email string between Messrs. Saul and Vanek dated September 3, 2014. Among other things, Mr. Vanek invited Mr. Saul to call him, as they "should talk rather than write." Mr. Vanek further stated that the "radio silence over the last several months was due to this deal." Then, on September 5, 2014, Messrs. Saul and Vanek had a telephone conversation during which Mr. Vanek stated that the acquisition was a "good thing" for Mission Measurement and that he expected that their joint product would be brought to market even more successfully with Blackbaud's large user base and support. At no time during the call, or on any of their prior calls on February 13, 2014, March 5, 2014 and June 18, 2014, did Mr. Vanek state that the Letter of Intent or Confidentiality Agreement were terminated, or that Defendants would not honor their promise to share in the revenue of the joint product.

41.     In fact, at no time did Defendants terminate the Letter of Intent or the Confidentiality Agreement. On the contrary, after the execution thereof and during all relevant times herein, MicroEdge's course of dealing with Mission Measurement gave every indication

11

that such agreements were still in effect. MicroEdge's statements and course of dealing made clear that Mission Measurement would share in the financial rewards from the joint product.

42. In addition, Defendants have not certified that they have returned or destroyed Mission Measurement's confidential information.

43. On October 26, 2015, Defendants issued a press release that "unveiled its transformational outcomes solution" featuring "a first-of-its-kind outcomes measurement taxonomy." Attached as Exhibit 5 is a true and correct copy of the press release. No mention was made of Mission Measurement. On information and belief, the referenced "outcomes solution" is the joint product covered by the Confidentiality Agreement and Letter of Intent. Defendants' actions in this regard clearly violate the Non-Compete.

44. In or about Fall 2015, without Mission Measurement's or Mission Metrics' knowledge or permission, MicroEdge began marketing the jointly developed software solution.

### *Defendants' Surreptitious Activity*

45. As described above, Defendants blatantly re-characterized the joint product as their own and secretly behaved as if the prior two and one-half years' of close work with Mission Measurement never happened.

46. On information and belief, MicroEdge, beginning on or about May 2014, executed a plan to misappropriate Mission Measurement's trade secrets and other intellectual property and repackage them as its own. Unbeknownst to Mission Measurement, MicroEdge was in the process of being acquired by Blackbaud during this period when it intentionally misled Mission Measurement that negotiations continued. Thus, MicroEdge had every motivation to cut Mission Measurement out of the significant financial rewards attributable to the joint product.

47.     Vista's and MicroEdge's plan to pump up MicroEdge's value worked.   On information and belief, during the sale process to Blackbaud, the joint software product was attributed tens of millions of dollars in value.   Moreover, on information and belief, during the sale process, either MicroEdge failed to disclose Mission Measurement's rights under the agreements and intellectual property rights, or Blackbaud knew of such rights and Defendants fashioned a strategy to exclude Plaintiffs.   In either case, Mission Measurement has been damaged at a minimum for not receiving at least half of the value attributed to the joint product in the acquisition of MicroEdge by Blackbaud.

### *Blackbaud's Acquisition and Sale of Stolen Product*

48.     As described above, in 2015, Defendants brazenly launched the joint product embodying Mission Measurement's essential intellectual property as Defendants' own.   Again violating the Non-Compete and other terms of the operative agreements, on February 4, 2016, Defendant Blackbaud issued a press release announcing the "general availability of Blackbaud Outcomes$^{TM}$, its transformational cloud solution. . . ."   Attached as Exhibit 6 is a true and correct copy of the release.   Blackbaud currently markets "Blackbaud Outcomes," which, on information and belief, embodies most if not all of the joint product offering developed by Mission Measurement and MicroEdge during 2012 to 2014 including Mission Measurement's Outcome Taxonomy, trade secrets and other intellectual property.   Again, Mission Measurement received no attribution or remuneration.

49.     As evidenced in Exhibit 6, Defendants' misappropriation is blatant and devoid of any attribution to Mission Measurement.   Such willful misrepresentations in Exhibit 6 are further evidenced by the identical nature of Defendants' software product and the product developed by and with Mission Measurement.   For example,

a. The product that Mission Measurement jointly developed with MicroEdge is identical to the final "Blackbaud Outcomes" product; and

b. Blackbaud's "Outcomes Taxonomy" is entirely based on Mission Measurement's trade secrets and other intellectual property, which were shared to MicroEdge under the Confidentiality Agreement and Letter of Intent as well as throughout the course of dealing between the parties.

50. Consequently, the bait and switch is undeniable: Mission Measurement was lured into disclosing its trade secrets and intellectual property based on a false promise of joint ownership and royalties. At no point did Defendants communicate that the parties' negotiations had ended, let alone claim that the confidentiality and non-compete obligations had terminated or expired. In fact, Defendants continue to market the jointly developed product as their own on Defendants' website and in its promotional videos. Exhibit 7 includes true and correct copies of screenshots from Defendants' public YouTube demonstration. Defendants' sales volume of its misappropriated "Blackbaud Outcomes" product is not public but will be established during discovery.

51. On or about February 8, 2016, counsel for Mission Measurement sent a letter notifying Blackbaud of, *inter alia*, Defendants' theft and misappropriation of Mission Measurement's intellectual property in clear breach of Defendants' contractual obligations.

52. On or about February 16, 2016, counsel for Blackbaud responded by denying the allegations and suggesting that the publication of Mission Metrics' patent application somehow insulated Defendants from their blatant copying and theft of Mission Measurement's intellectual property.

14

## COUNT I – BREACH OF THE CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

53.     Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs 1 through 52 above as though fully set forth herein.

54.     The Confidentiality Agreement is a valid, enforceable written contract, with definite and certain terms.

55.     Mission Measurement has performed and is still performing all of its required obligations under the Confidentiality Agreement.

56.     As stated above, Defendants have breached the Confidentiality Agreement by, *inter alia*, misappropriating Plaintiffs' confidential information without Plaintiffs' consent, by disclosing Plaintiffs' confidential information to third parties and as further described herein.

57.     As a result of Defendants' violation of the Confidentiality Agreement, Mission Measurement and Mission Metrics have suffered damages in an amount to be determined at trial.

## COUNT II – BREACH OF CONTRACT – LETTER OF INTENT

58.     Plaintiffs re-allege and incorporate by reference the allegations of Paragraph 1 through 57 above as though fully set forth herein.

59.     The Letter of Intent is a valid, enforceable written contract with definite and certain terms.

60.     Mission Measurement has performed and is still performing all of its required obligations under the Letter of Intent

61.     As stated above, among other provisions, Defendants have breached the Letter of Intent's non-compete and confidentiality provisions.

62.     As a result of Defendants' violation of the Letter of Intent, Mission Measurement and Mission Metrics have suffered damages in an amount to be determined at trial.

## COUNT III – TRADE SECRET MISAPPROPRIATION – 18 U.S.C. § 1836(b)

63.    Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs 1 through 62 above as though fully set forth herein.

64.    Mission Measurement is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate or foreign commerce.  Such trade secrets comprise Mission Measurement's financial, business, scientific, technical, economic and engineering information, including but not limited to plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs and codes, both tangible and intangible and stored, compiled and memorialized physically, electronically and graphically.

65.    Mission Measurement and Mission Metrics have taken reasonable measures to keep such information secret.

66.    Mission Measurement's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

67.    Defendants disclosed and used Mission Measurement's trade secrets without Mission Measurement's express or implied consent.  Defendants used improper means to acquire knowledge of the trade secrets by failing to abide by the Confidentiality Agreement, the Letter of Intent and otherwise.

68.    Defendants knew or had reason to know at the time of disclosure or use that their knowledge of the trade secrets was derived from or through Plaintiffs, and Defendants used improper means to acquire the trade secrets.  Defendants acquired the trade secrets under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of

16

the trade secrets. Defendants owed a duty to Mission Measurement to maintain the secrecy of its trade secrets or limit the use thereof.

69.     Defendants' improper means in disclosing Mission Measurement's trade secrets include Defendants' misrepresentation, breach or inducement of a breach of a duty to maintain secrecy of the trade secrets, breach of the Confidentiality Agreement, and breach of the Letter of Intent.

70.     Defendants, with intent to convert trade secrets that are related to a product or service used in or intended for use in interstate or foreign commerce to the economic benefit of Mission Measurement and Mission Metrics, and intending or knowing that the offense will injure Mission Measurement and Mission Metrics, did knowingly the following:

      a.     stole, or without authorization, removed, concealed, or by fraud, artifice, or deception obtained such information;

      b.     without authorization copied, duplicated, sketched, photographed, downloaded, uploaded, altered, destroyed, photocopied, replicated, transmitted, delivered, sent, mailed, communicated, or conveyed such information;

      c.     received or possessed such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

      d.     attempted to commit any offense described in paragraphs (a) through (c); or

      e.     conspired with one or more other persons to commit any offense described in paragraphs (a) through (c), and one or more of such persons performed an act to effect the object of the conspiracy.

71.     As a result of such misappropriation, Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT IV – TRADE SECRET MISAPPROPRIATION – ILLINOIS TRADE SECRETS ACT (765 ILCS 1065)

72.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 71 above as though fully set forth herein.

73.     Mission Measurement owns valuable trade secrets that were disclosed to Defendants pursuant to the Confidentiality Agreement, the Letter of Intent and the parties' course of dealing.

74.     Defendants knew or had reason to know that such trade secrets are confidential and proprietary to Mission Measurement.  However, despite such knowledge, Defendants improperly used for themselves and disclosed to third parties such trade secrets without Mission Measurement's express or implied consent.

75.     As a result of Defendants' misappropriation and breach of the Confidentiality Agreement and Letter of Intent, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT V – PROMISSORY ESTOPPEL

76.     Plaintiffs re-allege and incorporate by reference the allegations of Paragraph 1 through 75 above as though fully set forth herein.

77.     Defendants made unambiguous promises to Mission Measurement, *inter alia*, that the jointly developed software product is jointly owned and that the value obtained and revenues derived therefrom would be equitably paid to Mission Measurement.

78.     Mission Measurement reasonably and justifiably relied on these promises.

79.     Mission Measurement's reliance was expected and foreseeable by Defendants.

18

80.    Mission Measurement relied on Defendants' promises to its detriment.

81.    As a result, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VI – BREACH OF CONTRACT

82.    Plaintiffs re-allege and incorporate by reference the allegations of Paragraph 1 through 81 above as though fully set forth herein

83.    Defendant MicroEdge promised Mission Measurement that the software product described above is jointly owned by MicroEdge and Mission Measurement.  MicroEdge further promised that the parties would share the revenues from the sales of the product.  Such promises constitute a valid, enforceable contract with definite and certain terms.

84.    Mission Measurement has performed and is still performing all of its required obligations under such contract.

85.    As stated above, Defendants have breached such contract by, *inter alia*, refusing to acknowledge Mission Measurement's joint ownership and by failing to pay Mission Measurement its share of the revenues.

86.    As a result of Defendants' breach, Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT VII – UNJUST ENRICHMENT

87.    Plaintiffs re-allege and incorporate by reference the allegations of Paragraph 1 through 86 above as though fully set forth herein.

88.    Defendants have unjustly retained benefits to Mission Measurement's and Mission Metrics' detriment, and Defendants' retention thereof violates fundamental principles of justice, equity, and good conscience.

89.     Defendants should be required to disgorge all monies, profits and gains they have obtained or will unjustly obtain in the future at the expense of Plaintiffs, and a constructive trust should be imposed thereof for the benefit of Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a.      A judgment that Defendants breached the valid, enforceable, written Confidentiality Agreement.

b.      A judgment that Defendants breached the valid, enforceable, written Letter of Intent.

c.      A preliminary injunction enjoining business activities – including the use, development, sourcing and marketing – for any programs, products or services of Defendants that incorporate, use or embody Mission Measurement's trade secrets and other intellectual property.

d.      A judgment awarding Plaintiffs compensatory damages as a result of Defendants' breach of the Confidentiality Agreement and Letter of Intent, together with interest and costs for damages for which an adequate remedy at law exists, including lost profits, price erosion, a decrease in value to Plaintiffs' business, the costs of researching and developing the trade secrets and costs to remedy the effects of the misappropriation.

e.      Damages assessed against Defendants pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq*.

f.      Damages under the Illinois Trade Secret Act including compensatory damages, unjust enrichment or restitution damages and reasonable royalty damages.

g.      Imposition of a constructive trust for the benefit of Plaintiffs as a vehicle for disgorgement of all monies, profits and gains Defendants have obtained or will unjustly obtain in the future at the expense of Plaintiffs.

h.      A grant of a permanent injunction to eliminate the unfair advantage Defendants gained by using Mission Measurement's trade secrets and other intellectual property and, more specifically, (i) an order that Defendants certify to the court that they have destroyed all documents and things that include or embody Mission Measurement's trade secrets and other intellectual property; (ii) an order prohibiting the Defendants from reentering the market for the offending products or services for a period specified by the court; (iii) an order that Defendants refrain from selling their existing inventory of offending products; (iv) an order for a procedure for contacting customers and removing the products and a certification of the same; and (v) an order for a procedure for inspecting Defendants' premises to ensure that the trade secrets and other intellectual property are no longer used.

i.      Punitive damages for Defendants' willful and wanton misappropriation and tortious conduct.

j.      Exemplary damages pursuant to the Defend Trade Secrets Act of 2016 and 765 ILCS 1065/4 for Defendants' willful and malicious conduct.

k.      Expenses, costs and attorneys' fees.

l.      Such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury of all issues triable by a jury.

Dated:  June 8, 2016                                  Respectfully submitted,

                                                    By:      */s/ Joseph A. Mahoney*
                                                             Joseph A. Mahoney (ARDC No. 6269237)
                                                             Richard A. Assmus (ARDC No. 6255570)
                                                             MAYER BROWN LLP
                                                             71 South Wacker Drive
                                                             Chicago, IL  60606
                                                             (312) 782-0600
                                                             (312) 701-7711 (fax)

                                                             *Counsel for Mission Measurement Corporation and*
                                                             *Mission Metrics, LLC*

**Index of Exhibits**

| Exhibit No. | Description |
| --- | --- |
| 1 | Confidentiality and Non-Disclosure Agreement dated June 26, 2012 |
| 2 | Email string between Kristine Nimsger and Jason Saul dated April/May 2014 |
| 3 | Press Release – "MicroEdge Enters Into Agreement of Sale with Blackbaud, Inc.," dated September 2, 2014 |
| 4 | Email from Charles Vanek to Jason Saul dated September 3, 2014 |
| 5 | Press Release – "Blackbaud's MicroEdge Business Unveils Outcomes Solution for the Giving Community at MESC@Bbcon," dated October 26, 2015 |
| 6 | Press Release – "Blackbaud Launches Tranformational Outcomes Solution to Accelerate Impact in the Giving Community," dated February 4, 2016 |
| 7 | Blackbaud Outcomes – Product screenshots from webinar posted on 12/10/15 on www.youtube.com |

# EXHIBIT 1

Confidentiality and Nondisclosure Agreement

## CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Agreement is made this 26th day of June, 2012 ("Effective Date") by and between - Mission Measurement, LLC, located at 2 North LaSalle Street, Suite 1150, Chicago, Illinois 60602 (hereinafter referred to as "Disclosing Party") and MicroEdge, LLC, located at 619 West 54th Street, 10th Floor, New York, NY10019 (hereinafter referred to as "Receiving Party").

**WHEREAS**, the parties desire to share technologies and information, and explore and evaluate the advisability of pursuing a business or collaborative relationship on a mutually agreeable basis.

**WHEREAS**, Disclosing party possess certain Confidential Information it intends to disclose to Receiving Party.

**WHEREAS**, it may be necessary for Disclosing Party to disclose to Receiving Party certain Confidential Information in order to further the business or collaborative relationship.

**NOW THEREFORE**, in consideration of the mutual covenants and the terms and conditions contained in this Agreement, the Parties agree as follows:

1. **DEFINITIONS**

   1.1 **"Confidential Information"** means all information, whether on paper or in electronic or other storage form, of a confidential or proprietary nature of Disclosing Party which is disclosed to Receiving Party, including, but not limited to matters of a technical nature such as trade secrets, methods, data and know-how, drawings, databases, reports, inventions, patent applications, designs, machines, business processes, computer programs and documentation and similar items or research projects; matters of a business nature, such as information about costs, purchasing, profits, marketing sales, strategies, and lists of actual or potential customers; such other information as may be disclosed that is not generally ascertainable from public or published information or trade sources; further, Confidential Information also includes specific disclosures made to Receiving Party as set forth in Section 3.0 and any other information that is designated by Disclosing Party as confidential.

   "Confidential Information" does not include any information that:

   (a)     at the time of disclosure was generally available to the public (other than as a result of a disclosure directly or indirectly made in violation of this Agreement;

Confidentiality and Nondisclosure Agreement

    (b)    it was available to the other party on a non-confidential basis from a source other than pursuant to this Agreement as evidenced by its tangible records, provided, that to the best knowledge of such party such source is not and was not, bound by a confidentiality agreement applicable to the information, or;

    (c)    has been independently acquired or developed by the Receiving Party without violating any obligations under this Agreement or was available to the other party on a non-confidential basis prior to its disclosure to the other party

    (d)    is approved for release by written authorization of Disclosing Party.

1.2    **"Third Party"** shall mean any party not party to this Agreement and shall also include, but shall not be limited to, any employee, representative, agent or consultant of Receiving Party who does not have need to know Confidential Information of Disclosing Party for purposes of the discussions contemplated hereby or for purposes of the parties' entering into a business relationship as a result of such discussions.

## 2.    CONFIDENTIALITY OBILIGATION

Receiving Party shall not disclose Confidential Information received from Disclosing Party to any Third Party and shall not use such Confidential Information for any purpose other than the evaluation of the advisability of the parties' entering into the transaction contemplated by this Agreement, discussion of which is contemplated hereby, or of entering into such transaction unless Disclosing Party shall have given prior written consent to such other use or disclosure. Receiving Party shall retain in trust and confidence all Confidential Information disclosed by Disclosing Party and shall use the same degree of care to avoid disclosure or use of such information not authorized hereby as Receiving Party employs with respect to its own most confidential information.

## 3.    PRIOR DISCLOSURES

All disclosures made by Disclosing Party to Receiving Party prior to entering into this Agreement are acknowledged by Receiving Party to be Confidential Information of Disclosing Party, including but not limited to, high level software design specifications for functionality related to measuring social impact, outcome taxonomies, impact reports and analytics, and business models for selling access to metrics databases.

## 4.    NO COPYING

Receiving Party shall not copy or transcribe or permit the copying or transcribing of Confidential Information received from Disclosing Party or any portion or version thereof without the prior written consent of Disclosing Party.

Confidentiality and Nondisclosure Agreement

## 5. NO TRANSFER OF RIGHT OR TITLE

All title and rights to Confidential Information disclosed and/or communicated by Disclosing Party to Receiving Party hereunder are expressly reserved by Disclosing Party. Receiving Party acknowledges that it shall not acquire any right or title to the Confidential Information or any other proprietary information of Disclosing Party by virtue of its use of or access to such information hereunder.

## 6. NO REPRESENTATION AS TO ACCURACY

Although the Confidential Information may contain information which Disclosing Party believes to be relevant for the purpose of Receiving Party's evaluation of the transaction contemplated hereunder, Receiving Party understands that Disclosing Party is not making any representation or warranty as to the accuracy of completeness of the Confidential Information except to the extent of any representation or warranty that may be made in a definitive agreement entering into between the parties. Neither party shall have any liability to the other party relating to or arising from any use of the Confidential Information except to the extent that such use is made in violation of this Agreement.

## 7. DAMAGES AND INJUNCTIVE RELIEF

Receiving Party acknowledges that the provisions of this Agreement are reasonably necessary to protect Disclosing Party's rights with respect to the Confidential Information. Receiving Party agrees that it will not use the Confidential Information for purposes not specifically authorized by Disclosing Party or for its own commercial advantage and Disclosing Party shall be entitled to seek monetary damages for the unauthorized use. Notwithstanding the right to seek monetary damages, Receiving Party also agrees that damages alone would not be an adequate remedy for the irreparable harm to Disclosing Party resulting from violation of any of the provisions herein. Accordingly, Receiving Party agrees that Disclosing Party is entitled to specific performance and/or similar equitable remedy with respect to any violation or any threatened violation of such provisions and Receiving Party hereby consents to the granting of such relief to enforce the provisions herein and Disclosing Party may enforce its rights under this Agreement by bringing suit for injunctive relief or specific performance without payment of bond or security in connection therewith.

## 8. TERM

8.1  **Term.** The term of this Agreement shall be three years from the Effective Date as set forth herein.

8.2  **Return of Material Containing Confidential Information.** Upon termination of this Agreement for any reason, Receiving Party shall promptly deliver to Disclosing Party all material containing Confidential Information that has been received from Disclosing Party and shall not retain any copy or transcription of such material.

Confidentiality and Nondisclosure Agreement

8.3 **Ongoing Requirements for Confidentiality.** Receiving Party's obligations to maintain the Confidential Information in confidence shall continue until such information becomes lawfully known to the public or known to the public other than through a breach of this Agreement or a breach of any other obligation to Disclosing Party to keep the Confidential Information confidential.

## 9. GENERAL

9.1 **Applicable Law.** This Agreement shall be governed by the laws of the State of Illinois and may not be amended except in writing signed by the parties hereto. Receiving Party agrees it will not challenge the jurisdiction or venue of the courts located in Chicago, Illinois, either the Circuit Courts of Cook County, or the Northern District of Illinois in regards to actions filed pursuant to this Agreement.

9.2 **Independent Legal Advice.** The parties acknowledge that they have had an opportunity to obtain independent legal advice with respect to this Agreement.

9.3 **Severability.** Each provision contained herein is independent and severable from the others, and in the event that any provision of this Agreement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected thereby. Should any provision of this Agreement be held invalid, illegal or unenforceable in any respect, the parties agree to negotiate in good faith a valid, legal and enforceable provision effectuating the original intent of the parties.

**IN WITNESS WHEREOF**, the parties have entered into this Agreement as of the date first written above.

| Disclosing Party | Receiving Party |
|---|---|
| Signature: _Jason Saul_ | Signature: _Caleb McKenzie_ |
| Print: _Jason Saul_ | Print: _Preston McKenzie_ |
| Title: _CEO_ | Title: _CTO_ |
| Date: _June 26, 2012_ | Date: _June 26, 2012_ |

CHDS01 767716v1

# EXHIBIT 2

**Jason Saul**

**From:** Kris Nimsger <knimsger@microedge.com>
**Sent:** Monday, May 26, 2014 8:43 PM
**To:** Jason Saul
**Subject:** RE: Call with Kris Nimsger

Slightly swamped but we are moving along. How are you?

**From:** Jason Saul [mailto:jsaul@missionmeasurement.com]
**Sent:** Friday, May 23, 2014 8:36 AM
**To:** Kris Nimsger
**Subject:** Re: Call with Kris Nimsger

Hey Kris. How'd board mtg go? I know you're swamped no worries.

**From:** Kris Nimsger
**Sent:** Thursday, May 1, 2014 10:44 AM
**To:** Jason Saul
**Cc:** Charles Vanek
**Subject:** RE: Call with Kris Nimsger

Yes Jason. We have a product strategy in draft format and we are bringing it to the Board on Tuesday for their review – which would include integration of your taxonomy as well as a broader set of functions. Appreciate your patience as we finalize our strategy.

Best
K

**From:** Jason Saul [mailto:jsaul@missionmeasurement.com]
**Sent:** Thursday, May 01, 2014 10:28 AM
**To:** Kris Nimsger
**Subject:** Re: Call with Kris Nimsger

Kris, hi. Where did we leave off? Are you still intending to proceed?

**From:** Kris Nimsger
**Sent:** Friday, April 11, 2014 3:12 PM
**To:** Jason Saul
**Subject:** RE: Call with Kris Nimsger

Thank you!! Have a great weekend.

**From:** Jason Saul [mailto:jsaul@missionmeasurement.com]
**Sent:** Friday, April 11, 2014 2:37 PM
**To:** Kris Nimsger; Jason Saul
**Subject:** Re: Call with Kris Nimsger

Good. Cool stuff. Checkout btw

http://www.theguardian.com/social-enterprise-network/2014/apr/11/social-impact-measurement-algorithm
and
http://www.ssireview.org/blog/entry/introducing_the_impact_genome_project

**From:** Kris Nimsger
**Sent:** Friday, April 11, 2014 2:32 PM
**To:** Jason Saul
**Subject:** RE: Call with Kris Nimsger

Making progress on our end... will be back to you soon.

Kris

**From:** Jason Saul [mailto:jsaul@missionmeasurement.com]
**Sent:** Friday, April 04, 2014 11:28 AM
**To:** Kris Nimsger
**Subject:** RE: Call with Kris Nimsger

gotcha.

**From:** Kris Nimsger [mailto:knimsger@microedge.com]
**Sent:** Friday, April 04, 2014 11:27 AM
**To:** Jason Saul
**Subject:** RE: Call with Kris Nimsger

Jason, PS, there is a blizzard in MN and I'm working from home. Please use the cell 612-991-7796

-----Original Appointment-----
**From:** Jason Saul [mailto:jsaul@missionmeasurement.com]
**Sent:** Friday, April 04, 2014 8:45 AM
**To:** Jason Saul; Kris Nimsger
**Subject:** Call with Kris Nimsger
**When:** Friday, April 04, 2014 11:30 AM-12:00 PM (UTC-06:00) Central Time (US & Canada).
**Where:** Jason to cal Kris- 646.237.3980

-------------------------------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we accept no responsibility for damage that may be caused by them. -------------------------------------------------------
-------------------------------------------------------------

-------------------------------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we

accept no responsibility for damage that may be caused by them. -------------------------------------------------------
-------------------------------------------------------------

-------------------------------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we accept no responsibility for damage that may be caused by them. -------------------------------------------------------
-------------------------------------------------------------

-------------------------------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we accept no responsibility for damage that may be caused by them. -------------------------------------------------------
-------------------------------------------------------------

-------------------------------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we accept no responsibility for damage that may be caused by them. -------------------------------------------------------
-------------------------------------------------------------

# EXHIBIT 3

Careers | Newsroom | Contact Us

Enter Keywords

WHO WE SERVE  PRODUCTS  LEARNING+SERVICES  COMPANY

# News

MicroEdge Enters Into Agreement Of Sale With Blackbaud, Inc.

## Recent News

Blackbaud Releases Significant Updates to Employee Giving and Volunteering Cloud Solution

Blackbaud Launches Transformational Outcomes Solution to Accelerate Impact in the Giving Community

Blackbaud's MicroEdge Business Unveils Outcomes Solution for the Giving Community

MicroEdge Annual Solutions Conference Convenes Funders and Nonprofits

## Upcoming Events

**06.07.16** Indiana Philanthropy Alliance 2016 Statewide Conference

**06.23.16** Texas FIMS User Group

**06.27.16** POL 2016 Conference on Volunteering & Service

## Request Info

**Call Us: 888.388.1289** or

Request Form

### MicroEdge Enters Into Agreement Of Sale With Blackbaud, Inc.

**Acquisition connects giving and nonprofit communities to enable greater efficiency, collaboration and social impact**

**New York, NY, September 2, 2014** – MicroEdge LLC, the leading provider of technology solutions for the charitable giving community, today announced it has entered into an agreement to be acquired by Blackbaud, Inc. (Nasdaq: BLKB), a leading global provider of software and services for nonprofits. This acquisition unites MicroEdge's comprehensive technology solutions for grantmaking, corporate social responsibility and foundation management with Blackbaud's portfolio of software and services for nonprofits, and uniquely positions the combined companies to serve the entire spectrum of the philanthropic sector.

Under the purchase agreement for the transaction, Blackbaud will acquire all of the outstanding equity interests of MicroEdge for an aggregate purchase price of $160 million. The closing of the transaction is expected to occur in the fourth quarter of 2014, subject to customary closing conditions, including the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended. Blackbaud expects to finance the acquisition with cash on hand and borrowings under its existing credit facility.

"We're enthusiastic about the potential for our clients and our team as we join Blackbaud," said MicroEdge CEO Kristin Nimsger. "Blackbaud has a rich heritage of technology leadership in the nonprofit sector, and MicroEdge is a leading provider of software solutions for foundations in the charitable giving community. No two companies are better positioned to connect these segments of the market together. This collaboration will significantly improve efficiency and accelerate our goal of helping our mutual clients effectively measure the outcomes of their work."

MicroEdge's suite of products delivers a powerful, integrated and open framework for efficient and effective charitable giving. The company provides innovative solutions that help thousands of organizations raise, invest, manage, and award charitable currency.

For more than 30 years, Blackbaud has provided the nonprofit and education sectors with innovative technology and expertise to help them achieve their missions. The company services more than 30,000 customers in 60 countries with comprehensive solutions for fundraising, eMarketing, advocacy, constituent relationship management (CRM), financial management, payment solutions, analytics, and vertical-specific solutions. Using Blackbaud technology, clients raise over $100 billion each year.

"We're pleased to bring MicroEdge's innovative solution set into the Blackbaud portfolio of offerings," said Blackbaud president and CEO, Mike Gianoni. "Combining our 33 years of research and development with MicroEdge's deep experience in these unique markets will position Blackbaud to expand its total addressable market, while offering an unprecedented set of technology solutions to address the needs of funders, nonprofits and corporations."

"This acquisition creates a tremendous opportunity for Blackbaud to offer more customers new innovation and end-to-end solutions to meet their needs," said Joe Moye, president of

Blackbaud's Enterprise Business Unit. "In addition to partnering with new charitable foundation customers, we also intend to extend MicroEdge's Corporate Social Responsibility offerings to help companies maximize their philanthropic impact through cutting edge administration, reporting, employee engagement, and other capabilities."

MicroEdge is a portfolio company of Vista Equity Partners and Bregal Sagemount. Harris Williams & Co. and Kirkland & Ellis served as the advisors to MicroEdge, and Evercore and Davis Polk served as the advisors to Blackbaud.

"MicroEdge's leadership team has done a fantastic job over the past five years driving product innovation, maintaining strong customer loyalty and creating a broader vision for how technology can benefit the giving community," said Alan Cline, principal at Vista Equity Partners. "Blackbaud is an excellent home for this business given their adjacent market positions within the giving and nonprofit communities, and I anticipate an acceleration of MicroEdge's strategic vision as a result."

MicroEdge is headquartered in New York. Blackbaud is headquartered in Charleston, South Carolina, with operations around the globe. To review Frequently Asked Questions regarding the acquisition, please visit the MicroEdge website at www.microedge.com/Blackbaud.

**About MicroEdge**

Established in 1985, MicroEdge, LLC, is the leading provider of software and services to the giving community worldwide. MicroEdge solutions deliver a powerful, integrated, and open framework for efficient and effective charitable giving. The company is committed to providing the best technology toolset for foundations, corporations, government agencies, donors, advisors and financial institutions. Together, these tools help organizations to work with one another to raise, invest, manage and award charitable currency. MicroEdge is headquartered in New York City with regional offices throughout the U.S. and supports thousands of clients worldwide. To learn more about MicroEdge, visit www.microedge.com.

**About Blackbaud**

Serving the nonprofit and education sectors for more than 30 years, Blackbaud (NASDAQ:BLKB) combines technology and expertise to help organizations achieve their missions. Blackbaud works with more than 30,000 customers in over 60 countries that support higher education, healthcare, human services, arts and culture, faith, the environment, private K12 education, animal welfare and other charitable causes. The company offers a full spectrum of cloud-based and on-premise software solutions and related services for organizations of all sizes including: fundraising, eMarketing, advocacy, constituent relationship management (CRM), financial management, payment solutions, analytics, education solutions and vertical-specific solutions. Using Blackbaud technology, these organizations raise more than $100 billion each year. Recognized as a top company by Forbes, InformationWeek, and Software Magazine and honored by Best Places to Work, Blackbaud is headquartered in Charleston, South Carolina and has operations in the United States, Australia, Canada, the Netherlands, Ireland and the United Kingdom. For more information, visit www.blackbaud.com.

**About Vista Equity Partners**

Vista Equity Partners, a U.S.-based private equity firm with offices in Austin, Chicago and San Francisco, with approximately $13 billion in cumulative capital commitments, currently invests in dynamic, successful technology-based organizations led by world-class management teams with long-term perspective. Vista is a value-added investor, contributing professional expertise and multi-level support towards companies realizing their full potential. Vista's investment approach is anchored by a sizable long-term capital base, experience in structuring technology-oriented transactions, and proven management techniques that yield flexibility and opportunity in private equity investing. For more information, please visit www.vistaequitypartners.com.

**About Bregal Sagemount**

Bregal Sagemount is a growth-focused private equity fund with $500 million in committed capital. Bregal Sagemount makes investments of $15 million to $150 million in market leaders in high growth segments. For more information, please see www.bregalsagemount.com.

**MicroEdge Media Contact**
Kathy Krais
800.899.0890 ext. 3966
kkrais@microedge.com

**Blackbaud Media Contact**

Nicole McGougan

Blackbaud, Inc.

843.654.3307

media@blackbaud.com

MicroEdge is a trademark and/or service mark of MicroEdge, LLC. AngelPoints, GIFTS, GIFTS Alta, GIFTS Alta Blueprint, and GIFTS Online are trademarks of MicroEdge, LLC. All other company names or marks mentioned herein are those of their respective owners.

Copyright © 2014, MicroEdge, LLC

# # #

Who We Serve | Products | Learning+Services | Company | Newsroom | Contact Us

Follow:

Get MicroEdge products and services. Call

© 2016, MicroEdge, LLC. All Rights Reserved. | Privacy Statement | Safe Harbor Notice | Terms of Use

**888.388.1289**
for ordering details.

# EXHIBIT 4

**From:** Charles Vanek [mailto:cvanek@microedge.com]
**Sent:** Wednesday, September 03, 2014 2:05 PM
**To:** Jason Saul <jsaul@missionmeasurement.com>
**Subject:** RE: MicroEdge Sold

Yes, we should.  The radio silence over the last several months was due to this deal.  We should talk rather than write.  I'm a little stacked today, but very open tomorrow if you are.  CV

**From:** Jason Saul [mailto:jsaul@missionmeasurement.com]
**Sent:** Wednesday, September 03, 2014 2:01 PM
**To:** Charles Vanek
**Subject:** RE: MicroEdge Sold

Hey cool!!  Well let's discuss

**From:** Charles Vanek [mailto:cvanek@microedge.com]
**Sent:** Wednesday, September 03, 2014 1:48 PM
**To:** Jason Saul
**Subject:** RE: MicroEdge Sold

Well, the sale is a very good outcome.  I have, along with all of the other Sr. Team members, signed an employment agreement with Blackbaud.  So, going to do that corporate thing again.

**From:** Jason Saul [mailto:jsaul@missionmeasurement.com]
**Sent:** Wednesday, September 03, 2014 1:44 PM

1

**To:** Charles Vanek
**Subject:** RE: MicroEdge Sold

Saw that…
What are implications for you!?

---

**From:** Charles Vanek [mailto:cvanek@microedge.com]
**Sent:** Wednesday, September 03, 2014 1:44 PM
**To:** Jason Saul
**Subject:** MicroEdge Sold

http://online.wsj.com/article/PR-CO-20140902-914122.html
Please call to discuss implications.  CV

---------------------------------------------------------------------------------------------------------

CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we accept no responsibility for damage that may be caused by them. ----------------------------------------------------------
-------------------------------------------------------------

---------------------------------------------------------------------------------------------------------

CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we accept no responsibility for damage that may be caused by them. ----------------------------------------------------------
-------------------------------------------------------------

---------------------------------------------------------------------------------------------------------

CONFIDENTIALITY NOTICE: This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, you may not disclose, copy or use it. Please notify the sender ASAP and delete any copies from your system You should protect your system from viruses etc.; we accept no responsibility for damage that may be caused by them. ----------------------------------------------------------
-------------------------------------------------------------

# EXHIBIT 5

**WHO WE SERVE**    **PRODUCTS**    **LEARNING+SERVICES**    **COMPANY**

# News

Blackbaud's MicroEdge Business Unveils Outcomes Solution For The Giving Community At MESC@Bbcon

## Recent News

Blackbaud Releases Significant Updates to Employee Giving and Volunteering Cloud Solution

Blackbaud Launches Transformational Outcomes Solution to Accelerate Impact in the Giving Community

Blackbaud's MicroEdge Business Unveils Outcomes Solution for the Giving Community

MicroEdge Annual Solutions Conference Convenes Funders and Nonprofits

## Upcoming Events

**06.07.16** Indiana Philanthropy Alliance 2016 Statewide Conference

**06.23.16** Texas FIMS User Group

**06.27.16** POL 2016 Conference on Volunteering & Service

## Request Info

**Call Us: 888.388.1289** or

Request Form

### Blackbaud's MicroEdge Business Unveils Outcomes Solution For The Giving Community At MESC@Bbcon

**Solution seamlessly measures program outcomes and impact, enhancing collaboration between funders and nonprofits**

**Charleston, S.C., October 26, 2015** – MicroEdge®, a Blackbaud, Inc. (NASDAQ: BLKB) company and provider of solutions to the giving community worldwide, today unveiled its transformational outcomes solution at the MicroEdge Solutions Conference (MESC@bbcon). The company's outcomes solution solves key challenges experienced by funders and nonprofits as the sector evolves from traditional philanthropy to social investing.

As part of this shift to social investing, there is heightened demand for measuring funding outcomes and impact. Blackbaud's outcomes solution connects, powers and accelerates purposeful philanthropy by linking investments and actions to impact and achievement. This delivers a unified experience; bringing our expansive community together and effectively using data and insights to provide shared knowledge among funders and nonprofits.

Blackbaud's outcomes solution is the first platform that brings together funders and nonprofits under one umbrella for improved collaboration and mission alignment. In addition, the solution offers a first-of-its-kind outcomes measurement taxonomy that will continue to grow and evolve with use, getting smarter with each user interaction – a living record of social impact like no other. The taxonomy provides users with the flexibility to select from a system-wide, sector-sourced set of measurements or to enter their own in order to determine the success of their programs. This allows them to tell their impact story using statistics, results and a common language.

"The ability to understand and measure outcomes and impact is the single greatest challenge facing the giving community today," said Kristin Nimsger, CEO of MicroEdge. "Providing a powerful, easy-to-use solution is a vital part of Blackbaud's mission to empower the sector in its ability to achieve the most meaningful results with the greatest amount of impact."

An early-adopter program begins at MESC@bbcon and participants will provide input into future features including the outcomes measurement taxonomy, analytics and user interface design. MicroEdge invites those interested in participating to contact kris@microedge.com for more information.

**About MicroEdge**

Established in 1985, MicroEdge is the leading provider of software and services to the giving community worldwide. MicroEdge solutions deliver a powerful, integrated and open framework for efficient and effective charitable giving. The company is committed to providing the best technology toolset for foundations, corporations, government agencies, donors, advisors and financial institutions. Together, these tools help organizations to work with one another to raise, invest, manage and award charitable currency. MicroEdge is a wholly owned subsidiary of Blackbaud, Inc., headquartered in New York City with regional offices throughout the U.S. and

supports thousands of clients worldwide. To learn more about MicroEdge, visit www.microedge.com.

**About Blackbaud**

Serving the nonprofit, charitable giving and education communities for more than 30 years, Blackbaud (NASDAQ:BLKB) combines technology solutions and expertise to help organizations achieve their missions. Blackbaud works in over 60 countries to support more than 30,000 customers, including nonprofits, K12 private and higher education institutions, healthcare organizations, foundations and other charitable giving entities, and corporations. The company offers a full spectrum of cloud and on-premise solutions, and related services for organizations of all sizes, including nonprofit fundraising and relationship management, eMarketing, advocacy, accounting, payment, and analytics, as well as grant management, corporate social responsibility, education and other solutions. Using Blackbaud technology, these organizations raise, invest, manage and award more than $100 billion each year. Recognized as a top company, Blackbaud is headquartered in Charleston, South Carolina and has operations in the United States, Australia, Canada, Ireland and the United Kingdom. For more information, visit www.blackbaud.com.

**Media Contact**

Nicole McGougan
Public Relations
843.654.3307
nicole.mcgougan@blackbaud.com

**Forward-looking Statements**

Except for historical information, all of the statements, expectations, and assumptions contained in this news release are forward-looking statements that involve a number of risks and uncertainties. Although Blackbaud attempts to be accurate in making these forward-looking statements, it is possible that future circumstances might differ from the assumptions on which such statements are based. In addition, other important factors that could cause results to differ materially include the following: general economic risks; uncertainty regarding increased business and renewals from existing customers; continued success in sales growth; management of integration of acquired companies and other risks associated with acquisitions; risks associated with successful implementation of multiple integrated software products; the ability to attract and retain key personnel; risks related to our dividend policy and share repurchase program, including potential limitations on our ability to grow and the possibility that we might discontinue payment of dividends; risks relating to restrictions imposed by the credit facility; risks associated with management of growth; lengthy sales and implementation cycles, particularly in larger organization; technological changes that make our products and services less competitive; and the other risk factors set forth from time to time in the SEC filings for Blackbaud, copies of which are available free of charge at the SEC's website at www.sec.gov or upon request from Blackbaud's investor relations department. All Blackbaud product names appearing herein are trademarks or registered trademarks of Blackbaud, Inc.

MicroEdge + blackbaud
Better Together.

Who We Serve   |   Products   |   Learning+Services   |   Company   |   Newsroom   |   Contact Us

Follow:   

Get MicroEdge products and services.
Call

© 2016, MicroEdge, LLC. All Rights Reserved.   |   Privacy Statement   |   Safe Harbor Notice   |   Terms of Use

888.388.1289
for ordering details.

https://www.microedge.com/About/Newsroom/PressRelease/102615_Blackbauds_MicroEd...   6/2/2016

# EXHIBIT 6

# blackbaud

## Blackbaud Launches Transformational Outcomes Solution to Accelerate Impact in the Giving Community

*February 04, 2016 16:03 ET* | **Source:** Blackbaud, Inc.

*New cloud solution unites funders and nonprofits, empowering them to measure program outcomes and tell their impact stories*

CHARLESTON, S.C., Feb. 04, 2016 (GLOBE NEWSWIRE) -- Blackbaud, Inc. (NASDAQ:BLKB), the leading provider of software and services for the global philanthropic community, today announced the general availability of Blackbaud Outcomes™, its transformational cloud solution that solves key challenges experienced by funders and nonprofits as the sector evolves from traditional philanthropy to social, or impact investing.

"Forward-thinking grantmakers and nonprofits know that achieving their missions depends on data: they use it to inform their decisions, measure their outcomes and impact, and to tell the stories of the great work they do," said Andrew Wolk, CEO of Root Cause, a Blackbaud Outcomes partner. "Effective technology turns data into a bridge. As the giving sector shifts toward proving impact, technology can connect funders and their grantees as partners around shared goals, accountability, and results. It's a powerful tool for increasing collaboration, driving higher performance, and improving people's lives."

In this environment of increased focus on accountability and transparency, it has never been more important for the giving community to track and understand the specific and measurable impact of their programs so that they can make informed investment decisions. Blackbaud's MicroEdge business has spent the past five years connecting with clients and other leaders in the sector, conducting over 5,000 interviews along the way to create this industry-changing solution. And with its sector-sourced outcomes measurement taxonomy, Blackbaud Outcomes is the first solution to provide a common outcomes measurement language, empowering funders and nonprofits to truly understand the impact they are making and to tell their success stories using statistics, results and a shared language.

"Many of our clients have hundreds of grantees that are reporting metrics in hundreds of different ways, despite the fact that many of their programs support similar initiatives. With the outcomes measurement taxonomy in Blackbaud Outcomes, they will now be able to identify, track and report

on the most important metrics with consistency," said Kristin Nimsger, president of Blackbaud's Foundation and Corporate Markets Group.

Blackbaud Outcomes is the company's latest release in its modern cloud built exclusively for the philanthropic community. Leveraging Blackbaud SKY™ capabilities and powered by Microsoft Azure, this new solution connecting nonprofits and funders offers unprecedented innovation within the most secure, scalable and highest-performing cloud environment available.

Blackbaud Outcomes is already receiving attention from industry experts for its analytical power and advancements in bridging the taxonomy divide. "By linking investments and actions to impact and achievement, Blackbaud Outcomes creates a data standard and common language across nonprofits and foundations. This also creates the opportunity for the philanthropic community and their grantee partners to learn from others, improve the outcomes they achieve, and better tell their results story," said Gillian Williams, president of the Rensselaerville Institute.

"Blackbaud Outcomes provides a unified experience that allows funders and nonprofits to better collaborate and align their missions through data and shared insights," said Mike Gianoni, president and CEO of Blackbaud. "The launch of this Blackbaud SKY-enabled solution is just another example of how Blackbaud is not only empowering philanthropic organizations with modern, innovative and high-performance technology solutions, but also connecting this community together like no other partner to power an ecosystem of good."

For more information about Blackbaud Outcomes, visit www.blackbaud.com/outcomes.

**About Blackbaud**

Serving the worldwide philanthropic community for more than 30 years, Blackbaud (NASDAQ:BLKB) combines innovative software and services, and expertise to help organizations achieve their missions. Blackbaud works in over 60 countries to power the passions of approximately 35,000 clients, including nonprofits, K-12 private and higher education institutions, healthcare organizations, foundations and other charitable giving entities, and corporations. The company offers a full spectrum of cloud and on-premise solutions, as well as a resource network that empowers and connects organizations of all sizes. Blackbaud's portfolio of software and services support nonprofit fundraising and relationship management, eMarketing, advocacy, accounting, payments and analytics, as well as grant management, corporate social responsibility, and education. Using Blackbaud technology, these organizations raise, invest, manage and award more than $100 billion each year. Recognized as a top company, Blackbaud is headquartered in Charleston, South Carolina and has operations in the United States, Australia, Canada, Ireland and the United Kingdom. For more information, visit www.blackbaud.com.

**Forward-looking Statements**

Except for historical information, all of the statements, expectations, and assumptions contained in this news release are forward-looking statements that involve a number of risks and uncertainties,

including statements regarding the introduction of new products and product features, as well as the expected benefits of the new products and product features. Although Blackbaud attempts to be accurate in making these forward-looking statements, it is possible that future circumstances might differ from the assumptions on which such statements are based. In addition, other important factors that could cause results to differ materially include the following: general economic risks; uncertainty regarding increased business and renewals from existing customers; continued success in sales growth; management of integration of acquired companies and other risks associated with acquisitions; risks associated with successful implementation of multiple integrated software products; the ability to attract and retain key personnel; risks associated with management of growth; lengthy sales and implementation cycles, particularly in larger organization; technological changes that make our products and services less competitive; and the other risk factors set forth from time to time in the SEC filings for Blackbaud, copies of which are available free of charge at the SEC's website at www.sec.gov or upon request from Blackbaud's investor relations department. All Blackbaud product names appearing herein are trademarks or registered trademarks of Blackbaud, Inc.

```
Media Contact
Nicole McGougan
Public Relations
843-654-3307
nicole.mcgougan@blackbaud.com
```

---

**Newswire Distribution Network & Management**

- Home
- Newsroom
- RSS Feeds
- Send Releases
- Regulatory Filings
- Legal

© 2016 GlobeNewswire, Inc. All Rights Reserved.

ABOUT US

**GlobeNewswire**, a Nasdaq company, is one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases financial disclosures and multimedia content to the media, investment community, individual investors and the general public.

CONTACT US

| **Corporate Headquarters** | **European Headquarters** |
|---|---|
| 2321 Rosecrans Avenue. | Nikolaj Plads 6 |
| Suite 2200 | P.O. Box 1040 |
| El Segundo, CA 90245 | Copenhagen, Denmark |

Case: 1:16-cv-06003 Document #: 1 Filed: 06/08/16 Page 47 of 54 PageID #:47

**Phone:** (800) 307-6627  
**Fax:** (800) 307-3567

**Phone:** +45 33 77 03 77  
**Fax:** +45 33 12 86 13

# EXHIBIT 7











MicroEdge + blackbaud | Better Together.

## The Outcomes Solution

### Changes the Way Funders and NPOs...

- **Collaborate** around intended outcomes

- Share **real-time progress** updates

- **Analyze the results** of their programs

- Drive **decision making,** strategic direction

- **Communicate the impact** of their programs



6