# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MISSION MEASUREMENT CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 16 C 6003 |
| v. | ) ) | |
| BLACKBAUD, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

After the Court granted in part and denied in part Defendants' earlier-filed motions to dismiss,[1] Plaintiff Mission Measurement Corporation ("Mission Measurement") brought the present nine-count Third Amended Complaint against Defendants Blackbaud, Inc. ("Blackbaud"), MicroEdge, LLC ("MicroEdge"), Vista Equity Partners Management, LLC ("Vista Management"), VFF I AIV I, L.P. ("Vista I Fund"), VFF I AIV I-A, L.P. ("Vista I-A Fund"), Bregal Sagemount I, L.P. ("Sagemount"), and individual Defendants Todd Laddusaw, Preston McKenzie, Benny Melumad, Phil Montgomery, Kristin Nimsger, and Charles Vanek ("Individual Defendants") alleging violations of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831, *et seq.,* as well as state law claims, including an Illinois Trade Secrets Act ("ITSA") claim, 765 ILCS 1-65/1, *et seq.*

Before the Court is individual Defendants Laddusaw's and Melumad's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendants Laddusaw, Melumad, as well as Vista I Fund and Vista I-A Fund (collectively "Vista Funds"),

---

[1] The Court presumes familiarity with its December 12, 2017 Memorandum Opinion and Order granting in part and denying part Defendants' motions. [112].

also seek to dismiss Plaintiff's state law tortious interference with contract and tortious interference with prospective economic advantage claims as alleged in Counts VII and VIII, as well as Plaintiff's unjust enrichment claim alleged in Count VI pursuant to Rule 12(b)(6).

For the following reasons, the Court denies Defendants' Rule 12(b)(2) motion because Plaintiff has fulfilled its burden of establishing a prima facie case of specific personal jurisdiction over Defendants Melumad and Laddusaw. The Court grants in part and denies in part Defendants' Rule 12(b)(6) motion. In particular, the Court grants Defendants' Rule 12(b)(6) motion as to the Vista Funds and dismisses the funds as Defendants from this lawsuit. Otherwise, the Court denies the remainder of Defendants' Rule 12(b)(6) motion.

## LEGAL STANDARDS

### I.      Federal Rule of Civil Procedure 12(b)(2)

A motion to dismiss under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Wells Fargo Bank, N.A. v. Younan Prop., Inc.,* 737 F.3d 465, 467 (7th Cir. 2013). Although the "plaintiff bears the burden of establishing personal jurisdiction," *Brook v. McCormley,* 873 F.3d 549, 552 (7th Cir. 2017), when ruling on a Rule 12(b)(2) motion to dismiss based on the submission of written materials, a plaintiff need only make a prima facie case of personal jurisdiction. *Northern Grain Mktg., LLC v. Greving,* 743 F.3d 487, 491 (7th Cir. 2014). In analyzing a Rule 12(b)(2) motion without conducting an evidentiary hearing, courts accept the well-pleaded facts in the complaint as true. *Felland v. Clifton,* 682 F.3d 665, 672 (7th Cir. 2012).

### II.     Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Park Pet Shop, Inc. v. City of Chicago,* 872 F.3d 495, 499 (7th Cir. 2017).

## BACKGROUND

In its Third Amended Complaint, Mission Measurement alleges that it is the market leader in social sector data and insights relating to social change programs aimed at addressing issues such as poverty, hunger, access to healthcare, and climate change. (R. 119, Third Am. Compl. ¶ 30.) One of Mission Measurement's goals is to change the way non-profits, corporations, governments, and foundations invest in philanthropic endeavors by using data to measure and forecast social impact program outcomes. (*Id.*) Using data collected from social program evaluations, Mission Measurement has compiled a database of over 75,000 different data points, which it has categorized into approximately 130 social outcome types. (*Id.* ¶ 31.) Over the last decade, Mission Measurement has developed best practices and tools for the outcomes space, which includes a proprietary database, the Outcomes Taxonomy ™. (*Id.* ¶ 32.)

Defendant MicroEdge, a limited liability company organized under the laws of New York, is a provider of software solutions that automate the charitable giving process. (*Id*. ¶¶ 4, 33.) Vista Management is a limited liability company and investment firm that operates the private equity Vista Funds. (*Id*. ¶¶ 5, 33.) Vista Management acquired MicroEdge in 2009 and Vista Management, Sagemount, and the named Individual Defendants held investments in MicroEdge during the relevant time period. (*Id*. ¶ 33.)

Because Vista Management had significant concerns about obtaining a return on its investment in MicroEdge and wanted MicroEdge to innovate, MicroEdge – through Vista Management – sought out Mission Measurement to collaborate on outcomes related products. (*Id*. ¶ 36.) Specifically, because MicroEdge would soon be put up for sale, Vista Management and MicroEdge needed new products to increase the enterprise value for the sale. (*Id*.) To that end, MicroEdge negotiated an agreement with Mission Measurement to jointly develop outcomes related products. (*Id*. ¶ 38.) Nevertheless, despite MicroEdge's representations, Mission Measurement alleges that MicroEdge failed to act in good faith in negotiating an agreement, but instead – with the other Defendants – embarked on an intentional and consistent strategy of delay and obfuscation for the purpose of keeping Mission Measurement out of the market as a competitor for outcomes related products and services. (*Id*. ¶ 62.)

Mission Measurement further alleges that Vista Management, Sagemount, and the Individual Defendants manipulated the sale price of MicroEdge – using the relationship with Mission Measurement, its confidential information, and its market position – to advance their own personal economic benefit. (*Id*. ¶ 74.) Due to the sale of MicroEdge to Defendant Blackbaud, the Individual Defendants, the Vista Defendants, and Sagemount received direct financial benefits. (*Id*.) In addition, following Blackbaud's acquisition of MicroEdge,

Blackbaud initiated development of its own outcomes product using a team of both Blackbaud and MicroEdge employees, including some of the individuals who were involved in the Mission Measurement-MicroEdge relationship.  (*Id.* ¶ 75.)

## ANALYSIS

## I.     Personal Jurisdiction

Defendants Laddusaw and Melumad first challenge the Court's personal jurisdiction over them.  The Defend Trade Secrets Act does not have nationwide service of process that would confer personal jurisdiction over all Defendants, therefore, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper in an Illinois court. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 800 (7th Cir. 2014); Fed.R.Civ.P. 4(k)(1)(C).  "Illinois's long-arm statute permits its courts to exercise personal jurisdiction to the fullest extent allowed by the Illinois and U.S. Constitutions." *KM Enter., Inc. v. Glob. Traffic Techs., Inc.,* 725 F.3d 718, 732 (7th Cir. 2013).  "Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge."  *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425 (7th Cir. 2010); *see also Northern Grain Mktg.,* 743 F.3d at 492 ("the statutory question merges with the constitutional one – if Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so.").

Mission Measurement contends that it can establish personal jurisdiction over Defendants Laddusaw and Melumad based on specific jurisdiction – which grows out of "the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore,* 134 S.Ct. 1115, 1121 (2014).  The primary focus of the Court's specific jurisdiction inquiry is the non-resident

Defendants' relationship with Illinois. *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cnty.,* 137 S. Ct. 1773, 1779 (2017). In particular, "specific jurisdiction 'refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Brook*, 873 F.3d at 552 (citation omitted). "Only intentional contacts by the defendant with the forum jurisdiction can support specific jurisdiction." *Noboa v. Barcelo Corporacion Empresarial, SA,* 812 F.3d 571, 572 (7th Cir. 2016).

### A.   Individual Defendants

In response to the present Rule 12(b)(2) motion, Mission Measurement argues that the Court has specific jurisdiction over former MicroEdge employees Laddusaw and Melumad because they purposefully and intentionally directed their efforts toward Mission Measurement in Illinois to advance the commercial relationship between MicroEdge and Mission Measurement in relation to the joint development of the outcomes application at issue in this lawsuit. Specifically, Mission Measurement alleges that Laddusaw and Melumad were part of MicroEdge's core outcomes team involved in the Mission Measurement-MicroEdge collaboration. (*Id.* ¶¶ 9, 11, 27, 28.) As part of the outcomes team involved in the financial aspects of MicroEdge, Laddusaw, MicroEdge's former Chief Financial Officer ("CFO"), traveled to Chicago for a board meeting in 2013 to discuss MicroEdge's growth opportunities, including outcomes products, at which time the MicroEdge employees discussed efforts to do business with Mission Measurement in Illinois. (*Id.* ¶¶ 9, 25, 28, 55.) Also, Laddusaw was tasked with finding ways to increase MicroEdge's financial margins during its relationship with Mission Measurement. (*Id.* ¶ 28.) Mission Measurement further alleges that Laddusaw reported on the need for an agreement with outcomes partners, including Mission Measurement, and understood that Mission Measurement would be a worthwhile partner for a joint development

project.  (*Id*.)  Laddusaw was part of the central MicroEdge team that anticipated and discussed potential plans with Mission Measurement, and as part of that team, other MicroEdge employees kept Laddusaw up-to-date on MicroEdge's activity with Mission Measurement through correspondence from and with Mission Measurement.  (*Id*.)

Similarly, Melumad was MicroEdge's Chief Technological Officer ("CTO") responsible for software development, which included active involvement and discussions with Mission Measurement in the joint development of the outcomes software product.  (*Id*. ¶¶ 11, 27.)  As CTO, Melumad had an integral part in developing MicroEdge's outcome strategies and assessing how MicroEdge could gain momentum in the outcomes arena.  (*Id*. ¶ 27.)  Melumad and other MicroEdge employees met with Mission Measurement in Illinois, and he was among the core individuals leading the charge to collaborate and maintain a relationship with Mission Measurement.  (*Id*. ¶¶ 25, 27, 40.)  Melumad travelled to Chicago on more than one occasion. (*Id*. ¶ 55.)

Accepting these allegations as true and all reasonable inferences in Mission Measurement's favor, it has adequately alleged that Defendants Laddusaw and Melumad – as MicroEdge's corporate officers – were part of the core team of MicroEdge employees who induced Mission Measurement to engage in development efforts.  (*Id.* ¶ 55.)  As part of this team, Defendants Melumad and Laddusaw worked in close collaboration with Mission Measurement regarding the outcomes taxonomy at issue in this lawsuit.  (*Id.* ¶ 56.)  To that end, Laddusaw and Melumad intentionally and purposely had multiple contacts with Illinois through their travels and correspondence with Mission Measurement in relation to this collaboration.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and

wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").  In other words, Defendants' contacts with Illinois were not random, fortuitous, or attenuated.  *See Northern Grain Mktg.,* 743 F.3d at 492-93.  As such, Mission Measurement has fulfilled its burden of establishing a prima facie case of specific personal jurisdiction over MicroEdge's former corporate officers Melumad and Laddusaw.

### B.    Fiduciary Shield Doctrine

Defendants Laddusaw and Melumad next argue that the fiduciary shield doctrine shields them from personal jurisdiction.  "[R]ecognized by the courts of many states including Illinois," the fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal."  *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir. 1994).  "Illinois employs the fiduciary-shield doctrine, under which a person who enters the state solely as fiduciary for another may not be sued in Illinois."  *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001) (citation omitted).  Where a defendant's conduct "was a product of, and was motivated by, his employment situation and not his personal interests ... it would be unfair to use this conduct to assert personal jurisdiction over him as an individual."  *Rollins v. Ellwood*, 141 Ill. 2d 244, 280 (1990).  Nonetheless, the "shield is withdrawn if the agent was acting also or instead on his own behalf – to 'serve his personal interest[.]'"  *Rice,* 38 F.3d at 912 (quoting *Rollins*, 141 Ill.2d at 280).  The Court recognizes that "[s]everal courts of this district have found that the doctrine does not protect a defendant who has decision-making authority and a financial stake in the company that directed him or her to a jurisdiction."  *Orgone Capital III, LLC v. Daubenspeck*, No. 16 C 10849, 2017 WL 3087730, at *7 (N.D. Ill. July 20, 2017) (listing cases). In summary, if an employee has control over his own duties, namely, is a decision-maker for the

company, and acts in his own personal interest, the fiduciary shield doctrine does not prevent the Court from taking personal jurisdiction over that employee. *See Hach Co. v. Hakuto Co., Ltd.*, 784 F.3d 2d 977, 984 (N.D. Ill. 2011).

Viewing the allegations as true and drawing all reasonable inferences in Mission Measurement's favor, Mission Measurement has sufficiently alleged that MicroEdge's former CFO Laddusaw and CTO Melumad had leadership roles that entailed significant decision-making on behalf of MicroEdge and that they had personal financial interests in MicroEdge's relationship with Mission Measurement. In particular, Laddusaw and Melumad, along with the other former MicroEdge corporate officers, were financially motivated to develop and maintain a relationship between MicroEdge and Mission Measurement because they would earn at least one percent of the total purchase price of $160 million that Blackbaud paid to acquire MicroEdge. (Third Am. Compl. ¶ 74.) Defendants Laddusaw and Melumad also had equity interests in MicroEdge.[2] (*Id.* ¶ 33.) Based on the well-pleaded allegations construed as true, the fiduciary shield doctrine does not apply to Laddusaw and Melumad. The Court therefore denies Defendants' Rule 12(b)(2) motion.

## II.    Tortious Interference Claims

### A.    Tortious Interference with Contract – Count VII

Defendants Laddusaw, Melumad, and the Vista Funds move to dismiss Mission Measurement's tortious interference with contract claim as alleged in Count VII under Rule 12(b)(6). Tortious inference with contract under Illinois law includes the following elements: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the

---

[2] Laddusaw's and Melumad's argument that they only had minor equity interests in MicroEdge does not save the day at this procedural posture. *See Smith v. Burge,* 222 F.Supp.3d 669, 691 (N.D. Ill. 2016) ("defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations").

defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 131 Ill.2d 145, 154-55 (1989)).[3] Liability for tortious interference in Illinois is based on acts directed at the third party who breached the contract, such as conduct that prevents the party from performing the contract. *See MetroPCS v. Devor,* 215 F. Supp. 3d 626, 636-37 (N.D. Ill. 2016); *Greene v. Mizuho Bank, Ltd*., 206 F. Supp. 3d 1362, 1371 (N.D. Ill. 2016). Inducement means that there was "some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Pampered Chef v. Alexanian,* 804 F. Supp. 2d 765, 802 (N.D. Ill. 2011) (quotation marks and citations omitted). A corporate officer cannot interfere with its own contract unless the officer's conduct is malicious or without justification, namely, that the conduct is unrelated or antagonistic to the corporation's interest. *See Nation v. Am. Capital, Ltd.,* 682 F.3d 648, 652 (7th Cir. 2012); *Service By Air, Inc. v. Phoenix Cartage & Air Freight, LLC,* 78 F. Supp. 3d 852, 864 (N.D. Ill. 2015).

As discussed in the Court's December 2017 ruling, Plaintiff has set forth sufficient allegations that a valid and enforceable contract exists between MicroEdge and Mission Measurement and that MicroEdge breached the contract – allegations that Defendants do not challenge in the present Rule 12(b)(6) motion. The Court thus turns to Mission Measurement's other allegations regarding the alleged tortious interference by MicroEdge's corporate officers Laddusaw and Melumad. In the Third Amended Complaint, Mission Measurement has alleged

---

[3] The Court recognizes that the Federal Rules of Civil Procedure do not require plaintiffs to plead the elements of a legal theory because the rules "do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) (per curiam). Nonetheless, the elements of a legal claim give context to the Court's Rule 12(b)(6) assessment.

that Laddusaw and Melumad were aware of the parties' contract. (Third Am. Compl. ¶ 124.) Mission Measurement also alleges that with the intention of causing the breach of the contract, these Defendants intentionally and tortiously interfered with the contract through their wrongful conduct. (*Id*. ¶ 125.) As discussed under the personal jurisdiction section above, Defendants Laddusaw and Melumad were involved in MicroEdge's management decisions and facilitated the relationship between MicroEdge and Mission Measurement as related to the jointly-developed software product. During this same time period, MicroEdge's corporate officers Laddusaw and Melumad traveled to Chicago for a board meeting to discuss MicroEdge's growth opportunities, including outcomes products, at which time these MicroEdge employees discussed efforts to develop a contract with and do business with Mission Measurement in Illinois. Mission Measurement also maintains that Laddusaw and Melumad, along with the other MicroEdge corporate officers, prevented the jointly-developed product from going to market as a joint offering of MicroEdge and Mission Measurement and that their financial interests in the sale of MicroEdge to Blackbaud motivated both of them. (*Id*. ¶¶ 33, 37, 74, 75, 81.)

Furthermore, Mission Measurement alleges that MicroEdge's corporate officers, including Laddusaw and Melumad, knew that MicroEdge had other plans to develop an outcomes product and no longer wished to pursue a relationship with Mission Measurement leading to an inference that they were involved in the tortious interference with MicroEdge's contract with Mission Measurement. (*Id*. ¶¶ 61, 65, 66.) Prior to the Blackbaud acquisition, these individuals portrayed MicroEdge to prospective investors as having few to no outstanding commitments to Mission Measurement lending further support to the allegations that these corporate officers interfered with MicroEdge's contractual obligations. (*Id*. ¶ 66.) As discussed, Mission Measurement also had alleged that MicroEdge's former corporate officers had a

financial interest in MicroEdge cutting Mission Measurement out of the joint-development plan, including that they each earned at least one percent of the total purchase price of $160 million that Blackbaud paid to acquire MicroEdge. That Laddusaw and Melumad realized personal financial gain in relation to Blackbaud's acquisition overcomes the corporate officer privilege based on their unjustified conduct to cut Mission Measurement out of the joint-development plan underlying MicroEdge's alleged breach of contract. *See Nation*, 682 F.3d at 653 (corporate officer privilege overcome if defendant "induced the breach to further [its] personal goals or to injure the other party to the contract, and acted contrary to the best interest of the corporation"); *Service By Air,* 78 F. Supp. 3d at 864 ("To overcome the corporate officer privilege, a plaintiff must allege that the officer's conduct was unjustified or malicious.").

Examining these allegations and all reasonable inferences in Mission Measurement's favor, it has sufficiently alleged its tortious interference of contract claim against Defendants Laddusaw and Melumad under the federal pleading standards. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").[4] Moreover, this claim is not preempted by the ITSA because Mission Measurement does not base its tortious interference with contract claim on its trade secrets, but rather on its contract with MicroEdge and Defendants' alleged interference in MicroEdge's performance on the contract. *See Fire 'Em Up, Inc. v. Technocarb Equip.*, 799 F.Supp.2d 846, 852 (N.D. Ill. 2011) ("[T]he ITSA preemption provision 'does not apply to duties imposed by law that are not dependent

---

[4] As the Court explained in its December 2017 ruling in this matter, "[w]here pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (citation omitted); *see also* 5 Wright & Miller, Federal Practice & Procedure § 1224, at 300 & n. 7 (3d ed. 2004) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff."). Accordingly, Defendants' arguments suggesting otherwise are misplaced.

upon the existence of competitively significant secret information.'") (quoting *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 405 (7th Cir. 2005)).  As such, the Court denies Defendants Laddusaw's and Melumad's Rule 12(b)(6) motion to dismiss the tortious interference with contract claim as alleged against them in Count VII of the Third Amended Complaint.

That being said, Mission Measurement has failed to alleged sufficient factual details supporting its claims against the Vista Funds.  To clarify, the Vista Funds are private equity funds that Vista Management operates.  (Third Am. Comp. ¶ 7.)  Mission Measurement alleges that the Vista Funds held a majority of MicroEdge's stock.  (*Id*. ¶ 23.)  Moreover, Mission Measurement asserts that Vista Management controlled the funds until Blackbaud's acquisition of MicroEdge.  (*Id*. ¶ 24.)  According to Mission Measurement, Vista Management received financial benefits through these funds when Blackbaud purchased MicroEdge.  (*Id.* ¶ 74.)

Accepting the allegations as true and drawing all reasonable inferences in Mission Measurement's favor, the Vista Funds are private equity funds controlled by the individuals who work for the investment firm Vista Management – and Mission Measurement's tortious inference with contract and tortious interference with prospective economic advantage against Vista Management survived Defendants' earlier motions to dismiss.  Under these circumstances, Vista Management is the proper Defendant, especially because Mission Measurement's allegations do not include sufficient factual detail that these equity funds were anything but passive investments.  *See In re Estate of Albergo*, 275 Ill. App. 3d 439, 446 (2d Dist. 1995) ("Establishing inducement, in the context of a claim for tortious interference with a contract, 'requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way.'") (citation omitted).  The Court grants Defendants' Rule 12(b)(6) motion to dismiss in this respect and dismisses the Vista Funds as Defendants from this lawsuit.

**B.      Tortious Interference Prospective Economic Advantage – Count VIII**

In their Rule 12(b)(6) motion to dismiss, Defendants Laddusaw and Melumad argue that Mission Measurement has failed to sufficiently allege its claim of tortious interference with prospective economic advantage under the federal pleading standards.  Under Illinois law, the elements of a tortious interference with prospective economic advantage include:  "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference."  *Foster v. Principal Life Ins. Co.,* 806 F.3d 967, 971 (7th Cir. 2015) (citation omitted).  "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects."  *McCoy v. Iberdrola Renewables, Inc.,* 760 F.3d 674, 686 (7th Cir. 2014) (citation omitted).

The Court relies on its analysis directly above because Plaintiff's tortious interference with prospective business relationships and expectancies claim has considerable overlap with the tortious interference with Mission Measurement's and MicroEdge's contract.  Here, Mission Measurement further alleges that prospective business relationships and expectancies existed between it and MicroEdge, including that jointly-developed software product would be owned by both MicroEdge and Mission Measurement, and that the corporate officer Defendants were aware of these business expectancies.  (*Id.* ¶¶ 35, 38, 43, 44, 50, 56, 77.)  Plaintiff also alleges that MicroEdge's corporate officers, including Melumad and Laddusaw, intentionally and tortiously interfered with these business relationships and expectancies, as well as with its economic advantage, through their wrongful conduct.  (*Id.* ¶¶ 80, 81.)  Mission Measurement further asserts that during Mission Measurement's and MicroEdge's contract negotiations,

Defendants intended to induce Mission Measurement to engage in various contractual agreements with MicroEdge. (*Id*. ¶ 40.) MicroEdge's corporate officers had influence over MicroEdge and repeatedly assured Mission Measurement that they were moving forward together. (*Id*. ¶ 50.) Mission Measurement asserts that it relied on these representations and refrained from engaging in any development efforts with other partners, and as a result, Defendants' alleged misconduct kept it out of the market. (*Id*. ¶¶ 51, 80, 81.)

Accepting the well-pleaded facts as true and all reasonable inferences in Mission Measurement's favor, it has adequately alleged that Defendants Melumad and Laddusaw intentionally interfered with MicroEdge's and Mission Measurement's prospective business relationship preventing Mission Measurement from realizing the revenues of the jointly-developed software. *See, e.g., UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.,* 264 F.Supp.3d 897, 908 (N.D. Ill. 2017); *MetroPCS,* 215 F. Supp. 3d at 634. Also, this conduct is qualitatively different from Mission Measurement's allegations regarding the misappropriation of its trade secrets, and thus the ITSA does not preempt this claim. Furthermore, Mission Measurement has sufficiently alleged facts overcoming the corporate officer privilege because it has plausibly stated that Defendant Laddusaw's and Melumad's conduct was unjustified, especially in light of the alleged personal financial gain. *See Santangelo v. Crown Cork & Seal USA, Inc.*, 255 F. Supp. 3d 791, 811 (N.D. Ill. 2017) ("A corporate employee also can be held liable for interfering with his employer's business relationship with another employee if the employee 'places his or her own interests ahead of the corporate entity's interests.'") (citation omitted). Therefore, the Court denies Defendants Melumad's and Laddusaw's Rule 12(b)(6) motion to dismiss Count VIII.

### III.     Unjust Enrichment – Count VI

In Count VI of the Third Amended Complaint, Mission Measurement alleges an unjust enrichment claim in the alternative.  As Defendants recognize, Mission Measurement's unjust enrichment claim "will stand or fall" with the related tortious interference claims.  *See Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011) ("if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim.").

Here, Defendants argue that because Mission Measurement's tortious interference claims fail, so too must its unjust enrichment claim.  As explained, however, Mission Measurement has plausibly alleged its tortious interference claims against Defendants Laddusaw and Melumad, and thus the Court denies Defendants' motion to dismiss the unjust enrichment claim as alleged in Count VI.

### CONCLUSION

For these reasons, the Court denies Defendants' Rule 12(b)(2) motion to dismiss and grants in part and denies in part Defendants' Rule 12(b)(6) motion.

**Dated:**  March 26, 2018

ENTERED

**AMY J. ST. EVE**
**United States District Judge**